IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| MICHAEL BILLINGSLEY, )<br>)<br>*Plaintiff/Counter-Defendant* )<br>)<br>)<br>v. )<br>)<br>)<br>FEDERAL HOME LOAN MORTGAGE )<br>CORPORATION )<br>)<br>*Defendant/Counter-Plaintiff.* )<br>) | Civil No. 1:18-cv-755<br>Hon. Liam O'Grady |

## MEMORANDUM OPINION

This matter came before the Court on Defendant's Motion for Summary Judgment on All Claims. Dkt. 74. Having reviewed the pleadings, the Court concluded summary judgment for Defendant was appropriate. In recognition of the pending trial date, the Court issued a short order to this effect on June 10, 2019, with a memorandum opinion to follow. *See* Dkt. 94. Plaintiff's time for appeal will run from the date of this Memorandum Opinion and Order.

### I. BACKGROUND

Plaintiff Michael Billingsley, an African-American man, applied for employment as a Senior Producer with Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac"). He was interviewed for that position by hiring manager Ms. Annie Gong and her supervisor Director David Cardwell, despite having just five months of relevant experience. Freddie Mac contacted Plaintiff's former manager while considering him for employment.

Freddie Mac pursued another individual for the Senior Producer position, not Plaintiff. Ms. Gong recommended to Director Cardwell that Freddie Mac hire Plaintiff as a Producer, a

1

position lower than Senior Producer. Freddie Mac made him an offer of employment and Plaintiff accepted the Producer position. He began work at Freddie Mac on September 5, 2017.

Freddie Mac also offered Plaintiff a $4,000 cash sign on payment. That payment was subject to a number of terms set out in the Cash Sign-On Payment Letter Agreement. Plaintiff agreed to those terms and received the money.

The terms provided for repayment of the full payment amount upon Plaintiff's termination or resignation within one year of starting employment. They further provided that, if Plaintiff failed to reimburse the company under the terms agreed upon, Plaintiff would be liable for Freddie Mac's reasonable expenses incurred in obtaining repayment.

After Plaintiff began work, Director Cardwell, Ms. Gong, and a Freddie Mac Vice President named Stephen Johnson, each received customer complaints regarding Plaintiff's job performance. Director Cardwell and Ms. Gong also received complaints from coworkers about Plaintiff's attitude and behavior towards them in the workplace. These interpersonal conflicts and Plaintiff's poor performance prompted management to counsel Plaintiff, and on January 23, 2018—less than five months after Plaintiff started work at Freddie Mac—Ms. Gong and Director Cardwell together counseled him.

Following the joint counseling session, Ms. Gong received an email from Plaintiff which she perceived as insubordinate, and she thereafter met with the human resources department. She was told that Plaintiff could either be placed on a performance improvement plan or terminated. A short time later, Ms. Gong learned that Plaintiff was not regularly attending the weekly, multi-region conference calls of Producers and Senior Producers.

Immediately after sending Ms. Gong the insubordinate email, Plaintiff emailed Director Cardwell and asked for a private meeting. At this February 1 meeting, Plaintiff complained about Ms. Gong. The same day or the next day, Director Cardwell, Ms. Gong, and Vice

President Johnson determined that Plaintiff's varied issues—in job performance, customer and coworker interactions, and apparent unreceptiveness to counseling—were not well suited to being addressed by a performance improvement plan.

On February 6, Ms. Gong and Director Cardwell sent human resources a memorandum which described the reasons for Plaintiff's termination. On February 19, Plaintiff filed a "Misconduct Report" with Freddie Mac, complaining of "a hostile work environment" created by Ms. Gong (an Asian American woman) and Mr. Claudell Ellis (an African-American man). The complaint did not raise an issue of race-based discrimination. Ms. Gong and a human resources employee met with Plaintiff on February 20, 2018, and they notified Plaintiff of his termination.

A Freddie Mac Ethics Investigator subsequently investigated the "Misconduct Report." The investigator has no record of Plaintiff raising an issue of race or racial discrimination. The investigator ultimately upheld Plaintiff's termination.

Plaintiff has failed to reimburse the sign-on payment. He filed a Complaint on June 20, 2018, alleging intentional race-based discrimination (Count I) and retaliation (Count II), both in violation of 42 U.S.C. § 1981. Dkt. 1. Defendant moved for summary judgment on all of Plaintiff's claims. Dkt. 74.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of establishing the basis for its motion and identifying the evidence which demonstrates the absence of a genuine issue of material fact. *Id.* Once the

3

moving party satisfies its initial burden, the opposing party may show, by means of affidavits or other verified evidence, that there exists a genuine dispute of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In reviewing a summary judgment motion, the court must "draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992). "But there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (quoting *Anderson*, 477 U.S. at 249-50). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012) (citation omitted).

### III. ANALYSIS

#### 1) *Discrimination Claims*

Plaintiff has alleged race-based employment discrimination and retaliation in violation of 42 U.S.C. § 1982. Dkt. 1 ¶¶ 88-94. Section 1982 actions for discrimination and retaliation may be shown by direct evidence or through the burden-shifting framework outlined in *McDonnell*

4

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000).

There is no direct evidence here. Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir.1999) (*en banc*)). Plaintiff asserts direct evidence of discrimination exists because Ms. Gong determined Plaintiff was unqualified for the Senior Producer position only after learning of his minority status at his interview. Dkt. 79 at 23.

Ms. Gong's conduct does not constitute direct evidence because her actions do not directly reflect a discriminatory attitude. As the hiring official, Ms. Gong's conduct here was to offer a job applicant an interview and not subsequently offer that applicant the position. This conduct directly reflects only the execution of a hiring manager's job duties, not a discriminatory attitude. This is especially evident here, since Ms. Gong did not pass over Plaintiff completely and instead recommended that the company hire him at a different position. Since Plaintiff has not pointed to any statement or conduct which directly reflects a discriminatory attitude, there is no direct evidence.

Accordingly, the *McDonnell Douglas* burden-shifting framework applies to these claims. *See Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (citing *Hawkins*, 203 F.3d at 281 n. 1 and *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). The *McDonnell Douglas* burden-shifting framework is a three-step process:

First, the plaintiff must first establish a prima facie case of employment discrimination or retaliation; second, the employer bears "the burden of production," and must "articulate a non-discriminatory or non-retaliatory reason for the adverse action"; then, third and finally, the

5

burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's articulated reason is a mere pretext, and that the true reason is either discriminatory or retaliatory. *Id.*

### A. Count I: Race-Based Discrimination

Count I asserts that Freddie Mac discriminated against Plaintiff based on his race. The bases for these claims are, first, Freddie Mac's failure to hire Plaintiff into the Senior Producer position, and second, his treatment at Freddie Mac after he was hired.

#### i) Refusal to Hire

Plaintiff has failed to establish a prima facie case of discriminatory refusal to hire. A prima facie discriminatory refusal to hire case requires a plaintiff to show that (1) he is a member of a protected class, (2) he applied for the position, (3) he was qualified for the position, and (4) he was rejected in favor of someone who is not a member of a protected group under circumstances giving rise to an inference of unlawful discrimination. *See Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998). Here, Plaintiff has not shown the third or fourth elements.

First, there is no genuine dispute as to Plaintiff's lack of qualifications for the Senior position. Ms. Gong's mere willingness to interview Plaintiff does not show him to be qualified for the Senior position, nor does Plaintiff's own conclusion that he was qualified for that position make it true. In fact, and contrary to Plaintiff's assertions, Ms. Gong did not admit that she believed Plaintiff to be qualified for the Senior Producer position but only that he had "potential." Dkt. 79-5 at 44:14. Having potential is not synonymous with, or equivalent to, being qualified.

In addition, Freddie Mac sought Senior Producers with experience in direct customer interaction and sales as well as loan application processing, but Plaintiff lacked significant experience in those areas. Plaintiff contends that he was the "subject matter expert on Freddie

6

Mac's Small Balance Loan program" at his previous employer, and that in his role there he was called upon to interact with Freddie Mac employees, as well as customers. Dkt. 79-2 ¶ 5. Even so, Plaintiff had only five months of producer experience. Moreover, that experience was outside the Freddie Mac organization, and his interaction with originators at his former organization was not of the same kind of originator experience that Freddie Mac sought. He was therefore unqualified for the Senior Producer position.

Second, management's pursuit of another candidate for the Senior Producer position does not give rise to an inference of discrimination. The preferred candidate here, though not within Plaintiff's protected class, possessed the experience sought by Freddie Mac. Unlike Plaintiff, the recipient of the Senior Producer offer had the organizational experience since he was a Freddie Mac employee, as well as the production experience since he had worked on more complex loans, and he had worked there for ten months longer than Plaintiff. Plaintiff and that individual were therefore not similarly situated, so these circumstances do not give rise to an inference of discrimination. Plaintiff has therefore failed to establish a prima facie case for discriminatory refusal to hire.

Even if he had, Freddie Mac has met its burden under the final step of *McDonnell Douglass* by articulating a legitimate reason not to hire Plaintiff to that position, namely, his lack of experience. Further, Plaintiff has not shown by a preponderance of the evidence that his lack of experience was a mere pretext. A plaintiff's "bald assertions concerning [their] own qualifications," are insufficient, however, to disprove an explanation because "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) (quotation marks omitted). The preponderance of the evidence shows that Freddie Mac decision makers, most importantly the hiring manager, perceived Plaintiff to have insufficient experience for the Senior

7

Position. His own conclusion otherwise cannot overcome the employer's articulated reason, and Plaintiff has therefore failed to meet his burdens under the third step of the *McDonnell Douglas* framework.

### ii) Disparate Treatment

Plaintiff's disparate treatment claim arises from his treatment at Freddie Mac, specifically, from when his supervisor Ms. Gong instructed him to preapprove certain exceptions with her before he approved them himself. Dkt. 79 at 24.

To establish a prima facie case of race discrimination based on disparate treatment a plaintiff must show that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he met his employer's legitimate expectations at the time of the adverse employment action, and (4) he was treated differently from similarly situated employees outside his protected class. *See Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015). Plaintiff has not shown an adverse employment action or that he was meeting his employer's legitimate expectations when Ms. Gong issued the instruction of which he now complains. He has therefore not made out a prima facie case, and failed the first step of the *McDonnell Douglass* framework.

Plaintiff complains that on February 1, 2018, Ms. Gong emailed Plaintiff and requested that he receive her approval before issuing certain decisions to lenders. First, this email was not an adverse employment action. Notably, the instruction did not diminish Plaintiff's responsibilities, but only added oversight. Ms. Gong did not take this aspect of Plaintiff's job responsibility away from him, she was merely supervising his performance of this aspect. An "adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quotation marks and citation omitted). Mere additional

oversight where a plaintiff retained the same responsibilities, pay, and benefits does not constitute an adverse employment action. *See id.*; *see also, e.g.*, *Boney v. Trustees of Cape Fear Cmty. Coll.*, 366 F. Supp. 3d 756, 764 (E.D.N.C. 2019) (discussing adverse employment actions in the ADEA context).

Second, by the time that Ms. Gong wrote the email, she—Plaintiff's supervisor—and her supervisors had received complaints about Plaintiff from customers and had become dissatisfied with Plaintiff's achievement. Moreover, in just the weeks immediately prior to the complained-of email instruction, Ms. Gong had participated in at least two counseling sessions with Plaintiff, had perceived an email from Plaintiff to be insubordinate, and had been notified that Plaintiff was not regularly attending the weekly Producer calls. Plaintiff has therefore been unable to show that he was meeting his employer's legitimate expectations.

Because Plaintiff has not shown an adverse employment action or that he was meeting his employer's expectations, he cannot meet his burden under the *McDonnell Douglass* framework.

*B. Count II: Retaliation*

Plaintiff alleges in Count II that he was ultimately terminated in retaliation for past reports of racial discrimination. Dkt. 1 at 12, 13; Dkt. 79 at 1.

Again, in the first step of the *McDonnell Douglas* framework, a "plaintiff can prove illegal retaliation under Title VII or § 1981 if he shows that '(1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of [his employer]; and (3) [the employer] took the adverse action because of the protected activity.'" *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 543 (4th Cir. 2003) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001)).

Even assuming Plaintiff engaged in protected activity,[1] Plaintiff cannot prevail because he is unable to overcome Freddie Mac's articulated reason for termination. At step two of *McDonnell Douglass*, Freddie Mac's burden is to produce a legitimate, nonretaliatory reason for terminating Plaintiff. Freddie Mac met that burden in its termination memorandum by articulating Plaintiff's interpersonal conflicts with coworkers and customers, poor job performance, and unreceptiveness to feedback as the bases for his discharge. To show that this was pretextual, "a plaintiff must establish 'both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct.'" *Foster*, 787 F.3d at 252 (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (alteration in original). Plaintiff fails both prongs here.

First, he has not shown the falsity of Freddie Mac's articulated reasons. The record clearly supports Freddie Mac's articulated reasons for terminating Plaintiff: Plaintiff's supervisor Ms. Gong, her supervisor Director Caldwell, and one of the organization's Vice Presidents, had each received complaints about Plaintiff. Those complaints came from Freddie Mac customers, and therefore reflected poorly on Freddie Mac as an organization. Since numerous supervisors were receiving these complaints, management was well aware of Plaintiff's poor reflection on their organization. Moreover, some of those supervisors as well as Plaintiff's coworkers had negative interactions with him in the workplace, including insubordination. And although he had

---

[1] Protected activity includes employee actions opposing workplace discrimination practices. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (discussing Title VII). It may be "informal protests, such as voicing complaints to employers or using an employer's grievance procedures," and it "need not rise to the level of formal charges of discrimination." *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981). A complaint is protected opposition activity when it is in response to an unlawfully discriminatory employment practice. *See, e.g., Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014). Plaintiff asserts that he complained of racially discriminatory behavior. Dkt. 1 at 6; Dkt. 79 at 25. The only evidence of this is his own self-serving testimony, discussed below.

been counseled, he neither accepted feedback nor adjusted his conduct, and his supervisors had discussed this.[2]

Second, and independently, Plaintiff has not shown retaliation to be the real reason for his discharge. Plaintiff claims that he has been retaliated against for engaging in protected activity on January 23, February 1, February 2, February 8, February 9, and February 19. Dkt. 79 at 25-26. The record evidence shows only that Plaintiff complained generally, about his supervisor and workplace, on those dates. Only Plaintiff's own deposition, declaration, and notes support the proposition that his complaints were of discriminatory practices and were therefore protected activity. Yet his own self-interested testimony "cannot, absent objective corroboration, defeat summary judgment." *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) (citing *National Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000)). Outside Plaintiff's own testimony, there is no evidence that Plaintiff engaged in protected activity.

---

[2] Plaintiff's Opposition does not characterize the termination as a basis for Count I. *See* Dkt. 79 at 1, 22-24. To the extent the claim is sufficiently pleaded in the Complaint, it nonetheless fails. To establish a prima facie case of discriminatory discharge or termination, a plaintiff must show: (1) that he is a member of a protected class; (2) that he was qualified for the job and his job performance satisfied legitimate employer expectations; (3) he was terminated; and (4) other employees not members of the protected class were retained under apparently similar circumstances. *See Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004).

Here, Plaintiff did not show that he was meeting his employer's legitimate expectations, and he thus failed to establish a prima facie case. "An employer must retain the power to discipline and discharge disobedient employees." *Armstrong*, 647 F.2d at 448. When a "plaintiff's supervisors perceived him as insubordinate and disruptive . . . [he has] failed to comply with defendant's legitimate expectations." *Sadeghi v. Inova Health Sys.*, 251 F. Supp. 3d 978, 993 (E.D. Va. 2017), *aff'd*, 711 F. App'x 174 (4th Cir. 2018). Given Plaintiff's failure to meet the expectations set out above, he cannot establish a prima facie case of discriminatory discharge. Even if he could, he is unable to overcome Freddie Mac's articulated nondiscriminatory rationale for terminating his employment for the same reasons discussed above. Since the preponderance of the evidence does not indicate Plaintiff's poor performance was a mere pretext, this claim must fail.

Plaintiff's February 19 Misconduct Report is closest, because it alleged a hostile work environment. But it did so in the context of Plaintiff's interpersonal conflicts in the workplace. Plaintiff did not mention race or racially-motivated discrimination, and a major component of that complaint revolved around Plaintiff's interactions with Mr. Ellis, an African-American man. Also, notably, this complaint was made after the termination decision. Records of his other complaints mention neither a hostile work environment nor race.

Thus, even assuming Plaintiff showed a prima facie case of retaliation, he is unable to show that Freddie Mac's reason for terminating him was pretextual.

### 2. *Breach of Contract Counterclaim*

A breach of contract action in Virginia requires "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004). There is no dispute of material fact as to any element, and Freddie Mac is entitled to summary judgment on its breach of contract counterclaim.

Plaintiff and Freddie Mac agree that the Cash Sign-On Payment Letter Agreement is a valid contract and thus creates legally enforceable obligations. Dkt. 7 at 16 ¶ 23; 9 ¶ 23. The terms of that contract required Plaintiff to repay the full amount of $4,000 if Plaintiff were to be terminated pursuant to Freddie Mac Policy 3-214 within one year of his start date. The parties agree that Plaintiff started work on September 5, 2017 and was terminated on February 20, 2018. Dkt. 7 at 2 ¶ 8; Dkt. 9 ¶ 16. There is no dispute that Plaintiff was terminated within a year of starting work.

Plaintiff has maintained that his termination was in violation of 42 U.S.C. § 1981, and that he is resultantly not obligated to repay the $4,000. Dkt. 9 at 4; Dkt. 79 at 30. This defense fails because, for the reasons stated above, Plaintiff's termination was not a violation of § 1981.

Plaintiff also asserted, in a footnote, that he was not obligated to repay the money because Freddie Mac failed to state or show that Plaintiff was terminated pursuant to the policies identified in the agreement. Dkt. 79 at 30. This defense fails because neither the agreement nor the policy require Freddie Mac to identify the policy as a ground for termination. Instead, the terms of the agreement merely require a termination occur under the policy within a year.

Plaintiff's termination occurred pursuant to the corrective action policy. The policy identifies examples of corrective action which the company may take with underperforming employees, including informal counseling and termination of employment. The policy is clear that it does not require any previous corrective action or escalation, that an employee may be terminated at Freddie Mac's sole discretion, and that management's discretionary exercise of corrective actions is not a policy violation. Here, Plaintiff was terminated in accordance with Freddie Mac management's discretionary exercise of corrective action. Plaintiff had been informally counseled before, but that was not required because termination is itself a corrective action with no preconditions or constraints under the policy.

Since Plaintiff was terminated pursuant to the corrective action policy within one year of his employment, he was obligated to repay the $4,000. He has not, and Freddie Mac has therefore been damaged in the amount of $4,000. Dkt. 9 ¶¶ 25, 27. There is no dispute of material fact regarding the breach of contract counterclaim, and Freddie Mac is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, the Court **GRANTED** Defendant's Motion for Summary Judgment, Dkt. 74, on June 10, 2019. Dkt. 94. Judgment shall issue through a separate Order.

October 10 2019  
Alexandria, Virginia

                                            /s/ Liam O'Grady  
                                            Liam O'Grady  
                                            United States District Judge